## KORZIB v. NETHERLANDS–AMERICAN STEAM NAVIGATION CO.

(District Court, S. D. New York.   May 8, 1909.)

SHIPPING (§ 166*)—INJURY TO PASSENGER.
　　The libellant, a female passenger about 16 years of age, went to the
　　ship's pantry to obtain some hot water and in delivering a teapot to a
　　stewardess it was so handled by the latter that the spout of the pot
　　struck and destroyed the girl's eye. *Held*. that the accident was caused
　　by the stewardess carelessly or willfully striking the pot and the re-
　　spondent was liable.
　　　　(Ed. Note.—For other cases, see Shipping, Dec. Dig. § 166.*]
(Syllabus by the Judge.)

A. Leonard Brougham, for libellant.
Wing, Putnam & Burlingham, for respondent.

ADAMS, District Judge. This action was brought by Eufrazia
Korzib, an infant, by her guardian ad litem, to recover damages, al-
leged to amount to $30,000, for the loss of her right eye and becoming
permanently blind and disfigured through the spout of a teapot strik-
ing it when she went to a room on the respondent's steamship Nieuw
Amsterdam on or about the 20th day of June, 1907. The injured
infant was a Polish girl about 16 years of age, and proceeding from
Rotterdam to New York. The claim is more fully set forth in the libel,
as follows:

"Third. That on or about the 15th day of June, 1907, the libellant was
accepted by the said Company as a passenger for hire on board of its said
steamship 'Nieuw Amsterdam' for passage from Rotterdam, Holland, to the
Port of New York.

Fourth. That said Company thereby undertook and agreed to carry the
libellant safely and without injury from said Rotterdam to the Port of New
York on its said steamship, and undertook and agreed with the libellant, who
was then an infant of the age of sixteen years, that its agents, servants and
employees upon the said steamship would treat her with kindness and con-
sideration and would not do violence to her person or cause her to sustain
personal injury or come to harm through their careless, negligent or improper
conduct while she was in their charge as a passenger upon said steamship.

Fifth. That on or about the 20th day of June, 1907, while said steamship
was upon the high seas on about the sixth day of its trip from said Rotterdam

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the Port of New York, the libellant proceeded to a place on said steamship where said Company had provided and equipped a room or compartment for the purpose of furnishing hot water to passengers on said ship, upon their application therefor, for their use in making tea and for other purposes connected with their welfare and comfort, which room or compartment was then and there in charge of one of the female employees of said Company on said ship, who, at the time libellant arrived there, was drawing hot water for one of the other passengers upon said ship; that immediately after said employee had given the receptacle containing the hot water to this other passenger, the libellant presented herself at the window-like opening to said room or compartment and tendered a teapot to said employee to be likewise filled with hot water, extending the same in her right hand across the counter at said window and into the said room where said employee was; and that thereupon, and without any warning being given to the libellant, the said employee suddenly struck said teapot violently upon the bottom thereof and knocked it upward and back toward the libellant in such fashion that the metal spout thereof was caused to strike and become imbedded in the libellant's right eye-ball.

Sixth. That by reason of said wrongful and improper act of said Company's employee, and without any negligence on the part of the libellant contributing thereto, the libellant was caused to lose the sight of her right eye and to become permanently blind therein, her face was permanently disfigured and rendered hideous, her optic nerves and parts of her brain having to do with sight were so injured and deranged that the sight in her left eye was impaired and affected to such an extent that she may become blind in her left eye also, she was caused excruciating pain and suffering in her eyes and head, her nervous system was shocked and deranged, her chances of matrimony were destroyed and her future chances of earning her own living were and are seriously impaired by her disfigurement and blindness occasioned as aforesaid."

The answer of the respondent, after admitting the libellant's allegations that it was a foreign corporation, engaged in business as a common carrier of passengers, owning the said steamer at the time, and the allegations of the third paragraph of the libel, quoted above, proceeds as follows:

"Second: For answer to the fourth article of said libel, the respondent begs leave to refer to the passenger ticket or contract of carriage issued by the respondent for the passage of the libellant from Rotterdam to New York.

Third: The respondent admits that on or about June 20th, 1907, the libellant sustained certain injuries while on board the S. S. Nieuw Amsterdam. Further answering, it denies the correctness, accuracy or truth of each and every other allegation of the fifth article of said libel, and alleges that the truth as to said accident is as follows:

The Nieuw Amsterdam is a steel steamship of the finest modern type, of 17,250 tons net register, built in Belfast, Ireland, in 1906, and was at the time of the accident in all respects seaworthy and well fitted, equipped and supplied. For the convenience of the women and children passengers in the after compartments of the steerage between decks, the pantry in steerage compartment No. 7 was fitted with apparatus for furnishing hot water and milk, and a steerage stewardess was stationed in said pantry, whose duty it was to furnish milk and hot water to such passengers on request. No. 7 pantry is a room about 7 feet long athwartships by about 6 feet wide with a rectangular window opening into the steerage about 3 feet above the floor and about 4½ feet long by about 4 feet high. Inside this window there is a shelf of the same length as the window. In the steerage itself there were a table and two benches running athwartships and the space between the pantry window and the nearest bench was about 3½ feet.

On the afternoon of June 20th, 1908, a large number of passengers, including the libellant, were pressing towards the window and handing their jugs, kettles and other receptacles through the window to the stewardess to be filled with hot water. As the respondent is informed, the libellant stood

upon the nearest bench with a kettle in her hands and attempted to reach and lean over and past the other passengers in front of her, so that she might be served more promptly, and while she was thus trying to get ahead of the others, and negligently exposing herself to injury, the spout of her kettle was caused to come in contact with her eye, either through the jostling of the passengers or the act of some one or more persons among them or the motion of the ship or the libellant's losing her balance, or from all such causes.

Fourth: The respondent denies each and every allegation of the sixth and seventh articles of said libel.

Fifth: The respondent denies any knowledge or information sufficient to form a belief as to the allegations of article eighth of said libel.

\* \* \* \* \* \* \* \* \* \* \* \*

Seventh: The accident was not caused or contributed to by any negligence on the part of the respondent or its agents or servants. The Nieuw Amsterdam was in all respects well found, equipped and manned. The method of serving hot water to the passengers above described was the usual and customary method and was entirely safe and proper.

The injuries sustained by the libellant were due to the negligence of the libellant herself in standing up on a bench and attempting to reach and lean over past the other crowding and jostling passengers ahead of her while the ship was in motion, and were due also to the jostling of the passengers past whom she was trying to reach or the intentional act of some one or more persons amongst them, or to the motion of the sea and the libellant losing her balance, or were the result of a pure accident which could not have been foreseen or guarded against by human prudence.

As soon as the accident occurred, the ship's surgeon attended to the libellant and did everything that could be done in the treatment of the wound and the relieving the libellant's sufferings, and during the remainder of the voyage the libellant received every attention and consideration that could be given her."

It has been stipulated as follows:

"It is agreed between counsel that the pantry on the ship is seven feet long running athwartships, by about six feet deep, with a rectangular window opening into the steerage compartment which is about three feet above the floor and is about four and one-half feet long by about four feet high. That inside this window there is a shelf the same length as the window, about ten inches wide. That in the steerage compartment itself there was a table with a bench on either side of it running athwartships and that the space between the pantry window and the nearest bench was about four feet."

A statement of the ship's physician, on the part of the respondent, was, by consent, received in evidence, as follows:

"Surgeon of S. S. Rotterdam. Graduate of New York University Medical School 1892. Hospital Service in New York Lying-in Hospital, Gouverneur Hospital and Infant Asylum.

In service Holland-America Line ten years. Joined S. S. Rotterdam May 19th, 1907. Mrs. Van Rhyn, steerage stewardess, brought the girl Eufrasia Korbiz to my office in the evening and said her eye had been injured by the spout of a tea kettle. The wound was one running in and up over a quarter of an inch. I gave it an antiseptic boric dressing. There was nothing else to do. Instead of being convex the eye was then concave and in my opinion the only thing to do with it was to take it out thus preventing the danger of a sympathetic inflammation in the other eye. The girl was Polish and did not speak English. She was about five feet high.

Mrs. Van Rhyn did not bring her to me on any other occasion. She was brought by another stewardess."

The libellant testified, through an interpreter, that she was 16½ years old; that in June, 1907, she boarded the steamship at Rotterdam on the day of sailing, which was Friday; that on the follow-

ing Thursday in the evening, after supper, she met with the accident; that she had been sitting on her bed and her friend, Mary Przytula, came and sat with her, then took a teapot, which she borrowed from one of the other passengers, and left her and came back shortly without any hot water; that after a few minutes she went again, and again returned without any hot water; that then, after a few minutes, both went for hot water to the place, described above, where hot water was given out; that she found a woman there, the stewardess, and handed the kettle into the window, extending her arm its full length; that the woman hit the teapot and the spout flew into the libellant's eye; that at the time Mary was at her side but there were no other people there; that the stewardess did not give her any water; that as soon as the teapot struck her she yelled out and said to the stewardess: "You are the one that hit me in the eye and put my eye out;" that the stewardess then took her aside and wiped her eye, cleaned it with cold water; that the stewardess then took the libellant to the room of the stewardess and left her locked up, for about a half an hour, when she came and took her to the doctor, who examined and bandaged her eye and the stewardess then took her to her berth in the steerage; that the stewardess then came back in a few minutes with an older man who asked her "whether she put my eye out, whether the stewardess put my eye out," and "I answered that she" (the stewardess) "put my eye out"; that the next day she went to the ship's hospital and remained there during the rest of the voyage; that when she reached this country, she went to a hospital and stayed there six weeks. On the cross, she said she was alone on the voyage, excepting for Mary, but came to an aunt in this country; that she had never been for hot water before; that the stewardess hit the teapot on the bottom "and it came over and hit my eye that way"; that she did not know whether the stewardess did it intentionally or not; that it "hurt me very much. * * * It ran right away; it bled." On the re-direct, she said that her eyelid was not cut.

Mary Przytula testified that she was between 18 and 19 years of age, nearly 19; that she came to this country on the same ship, as the libellant; that on Thursday the libellant had her eye hurt, about half an hour after supper; that the two were sitting on the bed and the witness went for hot water; that the window was locked the first and second time and then both went together, finding the window open; that the libellant had the teapot and put her hand in the window; that there was nobody there but a woman in the room behind the window whom the witness had seen giving out water before; that the libellant put the teapot in the window and the witness looked around saying, "It is all over with my eye;" that the witness was then standing "about six steps away," about 3 feet; that when the libellant said it was all over with her eye, "the blood was going down"; that the stewardess then took the libellant to the latter's room to clean her eye; that the libellant stood on the floor at the window when she had the teapot in her hand; that the libellant was led from the pantry and the witness was not permitted to go with her, although she wanted to; that she next saw the libellant when she was brought back to her bed in the evening, with one eye bandaged; that that evening the

stewardess came to the bed with an elderly man, who asked the libellant "if this waitress put her eye out and Eufrazia said that she did, that this waitress put out my eye." On the cross, she said that there were not a lot of people in the compartment, drinking beer and standing around; that the spout of the teapot was higher than its top; that she stood three feet from Eufrazia while she was handing in the teapot through the window, in doing which, she stretched out her arm as far as it would go; that Eufrazia said to the stewardess in Polish: "You did that, your hurt my eye;" that neither she nor the libellant had had any trouble with the stewardess.

The respondent offered in evidence the statement of the ship's physician, quoted above, and the deposition of the stewardess.

The latter deposed that she had been with the respondent line for twelve years and on this steamer from April, 1906; that her position required her to look after the women and children, giving them hot water and milk; that the pantry was on the middle deck, amidships; that boiler was in the left hand forward corner of the pantry; that the accident to the libellant happened about seven o'clock in the evening; that she was injured when she came for her water, which she did morning and evening, when she was given as much as she wanted; that she was coming for water all the time; that thirty or forty people came, and she saw the libellant standing on the top of the bench which is fast to the table; that the witness said to her, "Get down there or you will get an accident;" that the libellant pushed the kettle toward the witness three or four times and there were a great many people there who seemed to be annoyed at her reaching over their heads, she was reaching her arm over the heads of others, of some 30 or 40 people standing there calling for hot water; that the witness said, "Little girl get down, if you don't you will get no hot water;" that she came back and the witness said the same thing three or four times; that "she was laying with her hands on the top of their heads to get the water; she wanted to be first to push the kettle towards me; she wanted to push the kettle like that (indicating) and some one came and lifted her arm and pushed the kettle up, one of the passengers that came for hot water, and I saw her go away." She was then asked: "Did you know her eye had been injured then?" to which she replied:

"A. I heard some noise outside, and I opened the door and I said, 'What is the matter?' They said, 'You done that.' I said, 'I, are you crazy; how do you get that?' I said, 'I couldn't reach you, how could I have done it?' and I took her arm and bring her to the doctor because it is not my custom to quarrel with young people. Q. What was the matter with her eye? A. I saw blood. Q. Which eye was it? A. I think it was the left eye. Q. Did you see the spout of the kettle driven into her eye? A. I didn't see it."

The witness then said she took the girl into the pantry, shutting "the door because a lot of people were coming," and took her to the doctor, the same moment; being asked if it was true when the girl was injured there was nobody at the window except one man and one other young girl she said:

"A. It was full of people, and therefore she laid her hands on the heads of others; she was in the rear of the other people."

She further said:

"Q. Is it true that the girl Eufrazia Korzib, reached in her kettle, that you sruck it up, and drove the spout into her eye? A. No; I only said 'go away.' Q. Did you touch her kettle? A. I did not have the kettle. Q. While it was in her hands, in the girl's hands, did you ever touch it? A. She had it all the time in her own hands; she couldn't reach me. Q. Did you strike the teapot violently on the bottom and knock it up towards the girl in such a way that the metal spout struck her eye? A. I did not touch the kettle; that was the time when the other passengers hit her arm. Q. Did you ever tell anybody that you hurt the girl's eye? A. I couldn't tell that; I didn't do it."

The testimony of the stewardess was not satisfactory or persuasive of the truth of her account of the matter and I think that given by the girls should prevail.

Whether this accident was caused by some careless act on the part of the stewardess or through some exhibition of temper is not shown but enough appears to be convincing that the vessel's agents did not perform their full duty to this passenger.

There will be a decree for the libellant, with an order of reference.